**UNITED STATES**

**v.**

**Airman First Class Charles L. LEWIS, FR 198–54–9494 United States Air Force.**

**No. ACM 25356.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Feb. 1986.

Decided 17 Sept. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Charles E. Ambrose, Jr.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major David F. Barton.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

**DECISION**

STEWART, Judge:

The accused, tried by military judge alone, was found guilty of stealing a .38 caliber pistol, making a false statement under oath, and carrying a concealed handgun, in violation of Articles 121 and 134, U.C.M.J., 10 U.S.C. §§ 921, 934. He plead-

ed guilty conditioned upon preserving the following assignment of error:

THE MILITARY JUDGE ERRED IN DENYING THE MOTION OF THE TRIAL DEFENSE COUNSEL TO SUPPRESS EVIDENCE UNDER M.R.E. 304, 305(e) and 305(g)(2) AND R.C.M. 905(b)(3).

In early October 1985 the Office of Special Investigations (OSI) at Dover Air Force Base was informed that the accused had stolen several government firearms, including a .38 caliber pistol. The accused consented to a search of his on-base quarters, and the OSI seized a number of items including a spring blade knife. No firearms were found. The following day, 8 October 1985, the accused provided the OSI a sworn statement denying taking any government firearms.

Apparently believing further investigation would be fruitless, the local OSI, shortly thereafter, recommended to its district headquarters that the investigation be closed. The knife was turned over to the accused's first sergeant. Article 15, U.C.M.J., action was initiated against the accused for possession of the knife, and he consulted with Captain A, the Area Defense Counsel, concerning the Article 15. On 31 October 1985 the accused accepted the punishment and elected not to appeal.

Meanwhile, OSI district headquarters directed that the investigation for the weapons be continued. Accordingly, in early November 1985 Special Agent (SA) D requested that the accused report to the OSI Office. When the accused so reported on 6 November 1985, SA D asked him to take a polygraph examination scheduled for the next day. The accused agreed. No one from the OSI contacted Captain A concerning the polygraph examination.

The next day the accused took the polygraph examination. After advisement of Article 31, 10 U.S.C. § 831 and counsel rights, which he waived, he made a written statement, admitting the offenses of which he stands convicted. The statement was the focal subject of the motion to suppress.

M.R.E. 305(e) is the heart of the defense's motion. It codifies, and perhaps extends, the rule announced in *United States v. McOmber*, 1 M.J. 380 (C.M.A. 1976), and *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976). The rule now requires:

When a person subject to the code who is required to give warnings under subdivision (c) [Article 31, UCMJ warnings] intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect *with respect to that offense*, the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed. (Emphasis supplied)

While it is not clear from the remainder of the record that Captain A had an attorney-client relationship with the accused embracing the offenses to which he confessed, Captain A maintained in testimony that he did. During the Article 15 process Captain A obtained from the OSI a paper which indicated the search had been for government firearms, including a .38 caliber pistol, and telephoned the first sergeant to inquire whether the Article 15 action for possession of the knife was the only action contemplated. He was told that the Article 15 was all that was contemplated, which accurately described the situation at the time.

It is customary in the Air Force to provide counsel to accused for specific purposes, such as Article 15 actions. Such appointments do not necessarily extend beyond such purposes. However, we will not decide that issue in this case, as Air Force rules and practices in this regard were not placed in evidence, and the Court of Military Appeals has indicated that, " ... it would be profitless for trial and the accused (sic) courts to spend time in deciding exactly when a military lawyer is authorized by service directives to be counsel for a service member whom he claims to represent." *United States v. Spencer*, 19 M.J. 184, 188 (C.M.A.1985).

In order to invoke the M.R.E. 305(e) notice requirement, counsel must have been appointed, or retained, to represent the accused in regard to the same offense, or a related offense, on which interrogation is proposed. M.R.E. 305(e); *United States v. Lowry, supra.* Subtle distinctions that require the separation of offenses occurring within the same general area within a short period of time are inappropriate. *United States v. Lowry, supra,* at 59.

The related offense issue has been addressed by military appellate courts on numerous occasions. *Lowry* was the first. There, the Naval Investigative Service (NIS) was investigating a series of arsons at Cherry Point Marine Corps Air Station. When the NIS told Lowry they were investigating the arson of Barracks 238, Lowry requested counsel and actually obtained counsel. Understandably the Court of Military Appeals held that notice to counsel was required when two and one half weeks later the NIS interrogated Lowry about the arson of Barracks 230.

Since *Lowry,* however, the military appellate courts have consistently been faced with facts which they found did not require notice to counsel. See, for instance, *United States v. Harris,* 7 M.J. 154 (C.M.A. 1979) (Alteration of a U.S. Treasury check investigated by the Secret Service was unrelated to an alleged marijuana sale charged by the military); *United States v. McDonald,* 9 M.J. 81 (C.M.A.1980) (Offenses of a different nature occurring in July and November 1980 were not related to drug offenses which took place in May 1980); and *United States v. Sutherland,* 16 M.J. 338 (C.M.A.1983). In *United States v. Spencer, supra,* the accused had been assigned counsel for willful damage to government property and possession of marijuana charges. Later, he was interrogated on a suspected transfer of LSD which had occurred after the dates of the first two offenses. Again the Court of Military Appeals found the offenses unrelated.

The Navy Court of Military Review, in *United States v. Fitzgerald,* 9 M.J. 889 (N.C.M.R.1980), found two assaults unrelated. Therein the first assault took place on 15 December 1979. Fitzgerald obtained an attorney. No notice was required as the second assault occurred on 21 January 1980 and the interrogation was held the day following. Where the accused was represented by an attorney in an administrative separation action for homosexuality, the Army Court of Military Review found her interrogation for murder was unrelated for notice purposes. *United States v. Varraso,* 15 M.J. 793 (A.C.M.R. 1983). This was true even though her homosexual conduct made her a suspect in the murder case. Similarly, in *United States v. Applewhite,* 20 M.J. 617 (A.C.M. R.1985), two rapes or sexual assaults occurring on 19 February 1984 and 12 April 1984, respectively, were found to be unrelated offenses.

We considered the notice requirement in *United States v. Littlejohn,* 5 M.J. 637 (A.F.C.M.R.1978). Littlejohn, who was stationed at Incirlik CDI, Turkey, submitted a ration card application for his wife on 2 February 1976. The application contained a false statement, as his wife had not accompanied him to Incirlik. Two days later he filed a claim for his family's travel from Great Falls, Montana, to John F. Kennedy Airport, New York. Article 15 punishment was imposed for the false ration card application on 8 June 1976. On 11 August the suspension of the punishment was vacated. The OSI, who knew about the false ration card application, interrogated him about the travel claim on 7 and 8 September 1976. The area defense counsel who represented Littlejohn during the Article 15 process was not notified. In upholding the admission of Littlejohn's statement to the OSI, we found that, although the offenses were under investigation during the same approximate time period, they otherwise involved distinct and unrelated matters. In affirming, the U.S. Court of Military Appeals distinguished *Lowry* stating:

... an obvious and crucial difference exists. In *Lowry,* the investigation was single and ongoing; here, prosecution of

one offense was finally concluded before the interview on the other came up. *United States v. Littlejohn,* 7 M.J. 200, 203 (C.M.A.1979).

In the case before us the offense for which the accused was punished pursuant to Article 15 was different in nature from the offenses of which he was convicted. With the exception of the false sworn statement, the offenses occurred months apart, and the Article 15 was complete at least a week before the 7 November OSI polygraph examination. Although the knife was discovered during an OSI search for government firearms, including a .38 caliber pistol, that investigation had been suspended and was only reinitiated after direction by district headquarters. By that time the Article 15 was far along in its processing. We conclude that the record establishes that the offenses were not related for purposes of M.R.E. 305(e) notification.

Additionally, we also find that the OSI did not know Captain A was representing the accused in regard to the offenses of which he stands convicted, nor do we believe they reasonably should have known. There was evidence to the effect that in October the accused told the OSI he had received an Article 15 for possession of the knife. This, the defense urged, shows the OSI should have known of Captain A's representation because most of those who receive Article 15's seek area defense counsel assistance. Such a broad theory was rejected by the U.S. Court of Military Appeals in *Littlejohn:*

> ... *McOmber* is not concerned with probable representation; it is concerned with an existing attorney-client relationship. I am unpersuaded that the *McOmber* rule should be enlarged to anticipatory notice to area defense counsel.

*United States v. Littlejohn, supra,* 203.

Furthermore, notice to the Chief of Military Justice at the base legal office and the First Sergeant that Captain A was representing the accused in the Article 15 proceeding was not imputed to the OSI. *United States v. Spencer, supra.*

Finally, there was evidence that Captain A and SA B, another OSI agent, who were neighbors, had a conversation concerning the accused on 10 November 1985 in their backyards. According to Captain A, SA B said, "I saw one of your clients," the accused, and related what had occurred concerning the polygraph examination and subsequent statement. SA B told Captain A that what had happened was " ... different ... totally different," than the subject of the Article 15 proceedings. SA B testified that he said, "[he] ... had a new client for him ..." and then Captain A told him that the accused was already his client. At the very most this evidence only indicates that the OSI knew, by 10 November, that the accused had been represented by Captain A in the Article 15 proceedings.

However, the Article 15 proceedings had been essentially completed on 31 October 1985. The situation here is remarkably like that in *Littlejohn,* which we believe is dispositive. Accordingly, we find there is no reason to charge the OSI with knowledge that Captain A was, at the time the polygraph examination was given and the statement taken, representing the accused as to other offenses.

For the above reasons we hold that the military judge was correct in denying the defense's motion to suppress the accused's November statement to the OSI. Based on our review of the record, the assignment of errors, and the Government's reply thereto, we conclude that the findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the accused was committed. Accordingly, the findings and the sentence are

AFFIRMED.

Senior Judge SESSOMS and Judge LEWIS concur.