**UNITED STATES, Appellee**

v.

**Stephen M. LeMASTERS, Senior Airman U.S. Air Force, Appellant.**

No. 93–0118.

CMR No. 28915.

U.S. Court of Military Appeals.

Argued Dec. 3, 1993.

Decided July 20, 1994.

For Appellant: *Captain Gilbert J. Andia, Jr.* (argued); *Colonel Terry J. Woodhouse* (on brief); *Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock.*

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Richard L. Purdon, Colonel Jeffrey T. Infelise, Captain Carlos L. McDade* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Appellant pleaded guilty to numerous offenses, in violation of Articles 86, 112a, and 85, Uniform Code of Military Justice, 10 USC §§ 886, 912a, and 885, respectively. He was sentenced to a dishonorable discharge, confinement for 10 months, partial forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, except for confinement exceeding 4 months and 3 days. The Court of Military Review set aside the Article 86 offenses and the offenses of use and distribution of methamphetamines because of a speedy-trial violation. It then affirmed the remaining findings of guilty and reassessed the sentence, substituting a bad-conduct discharge for the dishonorable discharge. We granted review to determine whether the military judge improperly admitted appellant's "four confessions taken without notification to appellant's counsel" in violation of Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984. 37 MJ 232.

Appellant argues that, when a suspect establishes an attorney-client relationship and subsequently initiates contact with investigators, waives his rights, and agrees to make a statement, no statement can be taken until counsel has been notified. We reject appellant's argument and hold that, when a suspect initiates contact with investigators and, with knowledge of his rights under Article 31, UCMJ, 10 USC § 831; Mil.R.Evid. 305(e); and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),

waives those rights, there is no duty to notify his counsel prior to taking his statement.

## FACTS

On May 12, 1989, appellant waived his rights and made a statement to a security police investigator. Three days later appellant was called to be interviewed by Special Agent Grantham of the Office of Special Investigations (OSI) and Special Agent Mullins, also of OSI. At that interview appellant requested an attorney, and the interview was terminated. About 2 hours later Grantham initiated an interview with appellant concerning other charges, and appellant waived his rights. However, the military judge suppressed the evidence from this second interview, after the prosecution stated it would not offer that statement in evidence.

On July 5, 1989, appellant went to the office of the area defense counsel to see his attorney, Captain LeEllen Coacher. Another area defense counsel, Captain T. Edward Vestal, told appellant that Captain Coacher had been reassigned and that Major Dent was the new circuit defense counsel but was then on temporary duty. Appellant telephonically contacted Major Dent and entered into an attorney-client relationship. Appellant concedes that no one subject to the Code attempted to interview him again from May 15 until July 14, 1989.

On July 12, 1989, the Philippine Narcotics Command (NARCOM) informed the OSI of its plan to run a "buy-bust" operation against appellant at his off-base residence. This undercover operation resulted in appellant's arrest by NARCOM. However, an interrogation was commenced by the OSI who advised appellant of his rights. Appellant waived his rights and consented to a search of his residence. This search revealed methamphetamine and drug paraphernalia.

On July 13, 1989, the OSI coordinated appellant's release from Philippine custody. Appellant then assisted the OSI in the search and apprehension of two servicemembers. Before appellant left the OSI office, Special Agent Grantham instructed appellant to contact Major Dent and to return to the OSI office to make a statement if appellant so desired *after consulting with his attorney*. Special Agent Grantham provided appellant with a phone and the phone number of the area defense counsel's office so that appellant could contact Major Dent.

Appellant returned to the OSI office on July 14, 1989, read, and signed the following:

> After being advised of my rights, I understand that the matter being investigative [sic] by AFOSI involves the incident that I was involved in on the night of 12–13 July 89 in which I obtained some shabu (methamphetamines) for a local National. Prior to this incident, I was interviewed by Security police and AFOSI regarding some other matters in which I was involved in or of which I have knownledge [sic] of. Regarding these prior incidents, I have consulted with a lawyer, I would now like to talk to AFOSI about all of these incidents and I do not wish to consult with my lawyer prior to discussing all of these matters with AFOSI. I understand that I am allowed to consult with my lawyer prior to being interviewed by AFOSI; however, I do not wish to talk with my lawyer or to have my lawyer with me during this interview.

On October 2, 3, and 11, 1989, appellant contacted the OSI three more times without requesting counsel in each instance and making statements. At trial the military judge found that the NARCOM operation was "not a subterfuge" for "reinitiating contact with the accused."

## DISCUSSION

Mil.R.Evid. 305(e) has the following notice requirement that overlaps *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981):

> When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense, the counsel must be notified of the intended interrogation and given a

reasonable time in which to attend before the interrogation may proceed.

Mil.R.Evid. 305(g)(1) further provides:

After receiving applicable warnings under this rule, a person may waive the rights described therein and in Mil.R.Evid. 301 and make a statement. The waiver must be made freely, knowingly, and intelligently. A written waiver is not required. The accused or suspect must acknowledge affirmatively that he or she understands the rights involved, affirmatively decline the right to counsel and affirmatively consent to making a statement.

If there is a violation of Mil.R.Evid. 305(e), then the evidence is inadmissible. Mil. R.Evid. 305(a) and 304(a). Mil.R.Evid. 305(e) "is taken from *United States v. McOmber*, 1 MJ 380 (CMA 1976)." * Drafters' Analysis, 1984 Manual, *supra* at A22–14.1 (Change 3).

Since the rule is derived from *McOmber,* a discussion of that case is in order. McOmber was taken to the investigator's office after initial questioning at his residence. Immediately after being warned of his rights, he requested counsel. Almost 2 months after the accused's attorney contacted the agent to discuss the case, the investigator again interviewed McOmber concerning related offenses. In *McOmber* we indicated that our concern is whether an attorney once appointed or retained to represent a military suspect must first be contacted by investigators who have notice of such representation when they wish to question the suspect. No decision of which we are aware has condoned such a surreptitious interrogation technique which plainly seeks to deprive an individual of the effective assistance of counsel.

1 MJ at 382.

*McOmber* preceded *Edwards* by 5 years. *Edwards,* like *McOmber,* is designed to prevent police badgering, *Davis v. United*

States, —— U.S. ——, 114 S.Ct. 2250, —— L.Ed.2d —— (1994), and overreaching. *See, e.g., Griffin v. Lynaugh,* 823 F.2d 856 (5th Cir.1987); *State v. Smith,* 156 Ariz. 518, 753 P.2d 1174 (1987). Mil.R.Evid. 305(e) is triggered when a person subject to the Code "intends to question" someone. This language was designed to protect the right to counsel when the police initiate the interrogation. If Mil.R.Evid. 305(e) is applicable, the suspect has a right to have his counsel notified, and his counsel must be given a reasonable period of time to attend the interrogation.

■ Here there is no evidence of police overreaching or badgering or attempting to "surreptitious[ly]" deprive appellant of the right to counsel. Rather, this is a case in which appellant intended to give a statement, indeed several statements, to the OSI agents. This discourse was initiated by appellant and not by the agents. If, as here, the prosecution can show that the accused was aware of his right to have his counsel notified and present at the interrogation, but that he affirmatively waived those rights, then a valid waiver under Mil.R.Evid. 305(g)(1) can be found.

On each of the four occasions appellant voluntarily came to the investigator's office. On July 13, 1989, the interrogator instructed appellant to contact his attorney. He provided appellant with a phone, an office, and a phone number of the area defense counsel. On July 14, 1989, appellant, who was not in custody, voluntarily returned to the OSI office and indicated that he had "consulted with a lawyer" and did "not wish to consult with my lawyer prior to discussing all of these matters with AFOSI." Additionally, there was no subterfuge by the OSI agents, and there is no issue in this case about the accuracy of appellant's confessions.

---

* *McOmber* cannot reasonably be based on Article 27, Uniform Code of Military Justice, 10 USC § 827, which concerns assignment of counsel for special and general courts-martial. In *United States v. Clark,* 22 USCMA 570, 48 CMR 77 (1973), the Court held that there was no right to counsel at interrogations other than those specified in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Article 27 has not changed since that decision. *See also* Ulmer, *Military Justice and the Right to Counsel* (1970); Christensen, *Pretrial Right to Counsel,* 23 Mil. L.Rev. 1 (1964).

We reject the idea that there is an indelible right of notice to counsel under Mil. R.Evid. 305(e). Like other Constitutional rights, a suspect may make a knowing and intelligent waiver. Under the circumstances of this case, we hold that there was a valid waiver under Mil.R.Evid. 305(g)(1).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and GIERKE concur.

WISS, Judge (concurring in part, dissenting in part, and concurring in the result):

Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984, forthrightly requires that, when a person subject to the Uniform Code of Military Justice intends to question a suspect under circumstances in which warnings under Article 31(b), UCMJ, 10 USC § 831(b), must be given and the questioner knows or should know that the suspect is represented by counsel, "the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed." The rule, which in regulatory fashion adopts this Court's decision in *United States v. McOmber*, 1 MJ 380, 382–83 (CMA 1976), is designed to protect the right to counsel when the suspect already has availed himself of that right. Art. 27, UCMJ, 10 USC § 827.

Usually, the concern in this connection is to insulate the suspect from an approach by law enforcement authorities unless and until counsel has been notified and given the opportunity to be present. The right to counsel, though, is the *suspect's* and, therefore, under appropriate circumstances in which

the suspect himself reinitiates the questioning, can be waived. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[1]

This waiver, however, must be knowing and intelligent to be effective, so I agree with the majority that the necessary basis for a government assertion of waiver is that, when renewed contact is initiated by the suspect, authorities may interrogate him without presence of his counsel only if he is aware of his specific right to have his counsel present during that interrogation but decides to proceed without counsel. Usually, as a practical matter, this will require the interrogator to advise the suspect of that right.[2] Nonetheless, even in the absence of evidence of such advice here, I agree with the majority that appellant's signed waiver, which in part provided that he did "not wish to talk with my lawyer *or to have my lawyer with me during this interview*" (emphasis added), minimally suffices to assure that appellant was aware of the right.

I consider all of what I have just said to be entirely consistent with the majority opinion. The majority acknowledges that Mil.R.Evid. 305(e) emanates from *McOmber* and does nothing here to restrict what I believe is the appropriate reading and application of that opinion. I am compelled to write separately, however, to express my disagreement with the majority's gratuitous challenge to the statutory basis for that decision.

The majority opinion in *McOmber*, itself, makes it entirely clear that its decision was "*on statutory grounds*" and that its focus was upon preventing "defeat [of] the *congressional purpose* of assuring military defen-

---

1. I read nothing in the majority opinion that suggests that similar "waiver" is available when *law enforcement authorities* reinitiate contact with a suspect who has asserted his right to counsel and who then is represented by counsel. Indeed, it was the fundamental principle of *United States v. McOmber*, 1 MJ 380 (CMA 1976), that police who want to renew questioning of such a suspect *must proceed through counsel*.

2. The Chief Judge's reading of *United States v. McOmber, supra,* does not permit a waiver analysis. I have carefully considered his view of *McOmber* because it expressly is my intention to

do nothing that undermines what I consider to have been a sound decision there. Nevertheless, I see no legal or logical reason to deny waiver under circumstances where the suspect himself reinitiates the interview, is specifically advised that he has the right to the presence of his lawyer during the interview, and where he expressly indicates that he wishes to proceed without his lawyer's presence. The *McOmber* Court did not have such a scenario before it, and I read nothing in the opinion or in the Court's concerns that motivated that decision which would preclude waiver under the circumstances described.

dants effective legal representation without expense. *Article 27, Uniform Code of Military Justice, 10 USC § 827.*" 1 MJ at 382 and 383 (emphasis added). Concurring separately, Judge Cook said nothing to suggest any disagreement with this view of the opinion's foundation and, in fact, himself specifically referred to the concern of "assur[ing] an accused of the effective assistance of counsel...." 1 MJ at 383.

Over a decade later, the Court *unanimously* was of the same mind. In *United States v. Fassler*, 29 MJ 193, 195 (CMA 1989), then-Chief Judge Everett wrote for himself and for then-Judge Sullivan and Judge Cox:

> As the Drafters' Analysis makes clear, Mil.R.Evid. 305(e) is derived from *United States v. McOmber*, 1 MJ 380 (CMA 1976), where the Court was concerned with protecting the statutory right of an accused to have counsel provided for his trial by court-martial. App. 22, Manual, *supra* at A22–14.1. *See* Art. 27, UCMJ, 10 USC § 827.

Undaunted—but without coming to grips with the language in either of these two opinions—the majority in the footnote to its opinion asserts that "*McOmber* cannot reasonably be based on Article 27...." With respect, the majority today for some unstated reason might *disagree* with the basis of *McOmber;* but there simply is no room to doubt that the three Judges who signed *McOmber* and the three different Judges who signed *Fassler* (one of whom, Judge Cox, is part of today's majority) not only reasonably could but, in fact, did view Article 27 as the foundation of *McOmber.* The majority's two-step inference to the contrary, that relies on a *pre-McOmber* decision on a different question of law related to Article 27, is not persuasive. The majority asserts: "Article 27 has not changed since that decision [*United States v. Clark*, 22 USCMA 570, 48 CMR 77 (1973) ]." 39 MJ at 492 n. * It has not changed since *McOmber* or *Fassler*, either.

SULLIVAN, Chief Judge (dissenting):

At issue in this case is whether a military interrogator must give notice to an attorney, known to be representing a suspect concerning an offense, when that suspect voluntarily initiates an interview about that offense with the military interrogator. I disagree with the negative response of the majority. In my view, Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984, applies in this situation. Furthermore, in this case, there was no evidence of compliance with the Mil.R.Evid. 305(e) waiver requirement provided in Mil.R.Evid. 305(g)(2) or of an intelligent waiver by appellant of the particular requirements of Mil.R.Evid. 305(g)(2). *See* Mil.R.Evid. 305(g)(1).

Mil.R.Evid. 305(e) provides:

> *Notice to Counsel.* When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense, *the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.*

(Emphasis added.)

Mil.R.Evid. 305(g)(1) further provides:

> (g) *Waiver.*
>
> (1) *General rule.* After receiving applicable warnings under this rule, a person may waive the rights described therein and in Mil.R.Evid. 301 and make a statement. The waiver must be made freely, *knowingly, and intelligently.* A written waiver is not required. The accused or suspect must acknowledge affirmatively that he or she understands the rights involved, affirmatively decline the right to counsel and affirmatively consent to making a statement.

(Emphasis added.)

Finally, Mil.R.Evid. 305(g)(2) further provides:

> (g) *Waiver.*
>
> \*       \*       \*
>
> (2) *Counsel.* If the right to counsel in subdivision (d) is applicable and the ac-

cused or suspect does not decline affirmatively the right to counsel, the prosecution must demonstrate by a preponderance of the evidence that the individual waived the right to counsel. *In addition, if the notice to counsel in subdivision (e) is applicable, a waiver of the right to counsel is not effective unless the prosecution demonstrates by a preponderance of the evidence that reasonable efforts to notify the counsel were unavailing or that the counsel did not attend an interrogation scheduled within a reasonable period of time after the required notice was given.*

(Emphasis added.)

The majority opinion first suggests that Mil.R.Evid. 305(e) does not apply in this case. 39 MJ at 490–91 ("[W]hen a suspect initiates contact with investigators and, with knowledge ... waives [his] rights, there is no duty to notify his counsel prior to taking his statement."). As such, it conveniently sidesteps the unique requirement for establishing an effective waiver of the right to notification of counsel when this notification requirement is applicable. *See* Mil.R.Evid. 305(g)(2). The majority opinion also implies that appellant waived his right to counsel notification under Mil.R.Evid. 305(e) by his subsequent contact with the security police. However, this approach simply ignores Mil.R.Evid. 305(g)(2) and the fact that no waiver of its particular requirements was properly evidenced in this case.

Turning first to the Mil.R.Evid. 305(e) question, the majority opinion usurps the role of the President by adding language to that evidentiary rule. In effect, the majority is judicially amending Mil.R.Evid. 305(e) by implicitly appending the phrase "this notification requirement applies to all police-initiated interviews but not to interviews initiated by a suspect." I do not read into Mil.R.Evid. 305(e) a condition precedent that the interrogator initiate the questioning. Mil.R.Evid. 305(e) was derived from this Court's holding in *United States v. McOmber*, 1 MJ 380 (CMA 1976). Drafters' Analysis, Manual, *supra* at A22–14.1 (Change 3); *see United States v. Kendig*, 36 MJ 291 (CMA 1993).

This Court's opinion in *McOmber* also does not provide the basis for such judicial rule-changing.

It is significant to note that *McOmber* was expressly based on statutory grounds (Art. 27, UCMJ, 10 USC § 827). In a concurring opinion, Judge Cook articulated the Court's overriding concern "to assure an accused of the effective assistance of counsel." 1 MJ at 383. Consistent with this concern, this Court rejected the argument advanced by the Government that advising a suspect, who is known to be represented by counsel, of Article 31 rights would be sufficient to further interrogate the suspect outside the presence of, and without notifying, counsel. *Id.* at 382–83. As such, Mil.R.Evid. 305(e) must be applied as a bright-line rule of evidence intended to exclude evidence obtained in *derogation of an existing attorney-client relationship.*

The military interrogators in the case *sub judice* did not initiate questioning, or blatantly "seek[ ] to deprive [appellant] of the effective assistance of counsel[,]" *United States v. McOmber, supra* at 382. However, I conclude that Article 27 and Mil.R.Evid. 305(e) do not require such police conduct. These provisions are intended to eliminate the pressures that might exist in a military society which tend to interfere with the accused's statutory right to effective legal representation. *Cf. United States v. Gibson*, 3 USCMA 746, 752, 14 CMR 164, 170 (1954)(under pressures of command, superior rank, and official military position, Article 31 intended to buttress Constitutional rights), *cited with approval in United States v. Raymond*, 38 MJ 136, 139 (CMA 1993).

Regarding waiver, the fact that appellant approached agents of the Office of Special Investigations (OSI) to initiate an interview might suggest a waiver of any Fifth Amendment or Article 31 right that may have been invoked. *See United States v. Fassler*, 29 MJ 193, 195 (CMA 1989) (requirements under Fifth Amendment and Mil.R.Evid. 305(e) may be different). However, the plain language of Mil.R.Evid. 305(g)(2) *additionally* requires reasonable efforts by the Government to comply with the notice provision of

Mil.R.Evid. 305(e) before such waivers can be effective as a matter of military law. Assuming, *arguendo*, that the notification requirements of Mil.R.Evid. 305(e) and the attempted notification requirement of 305(g)(2) can similarly be waived by a suspect, there is simply no evidence that appellant knowingly waived these rights in this case.

There was evidence presented to the military judge regarding appellant's waiver of his right to consult with, and request the presence of, counsel. Interviews were conducted on July 14 and October 2, 1989; before the October 2 interview, appellant signed an affirmation which included the following:

*After being advised of my rights, I understand that the matter being investigated by AFOSI involves me and that I would like to talk to AFOSI about this matter without first consulting with my lawyer. I have* previously *consulted with a lawyer* regarding my investigation and have been instructed by my lawyer not to talk with AFOSI regarding my investigation, however, I am declining any legal counsel and I am voluntarily and knowingly disregarding my lawyer's advise [sic]. *I understand that I am allowed to consult with my lawyer prior to being interviewed by AFOSI, however, I do not wish to talk to my lawyer or to have my lawyer with me during this interview.* I am fully consenting to this interview under no pressure or coercion.

(Emphasized language was also included in July 14 affirmation.) However, at no time did appellant request that his lawyer not be notified or that he was waiving his right to such notice or a reasonable attempt by the Government to notify him. Particularly noteworthy is that on July 17, 1989, only 3 days after making an incriminating statement to OSI, appellant returned to the OSI office with an attorney and "repudiated his statement[.]" Furthermore, appellant refused to sign the July 14 statement.

The Government should notify counsel when it knows or has reason to know that counsel has been retained by or appointed to a suspect. The burden on the Government is small. *Cf. United States v. Johnson*, 20 USCMA 320, 325, 43 CMR 160, 165 (1971). When an accused initiates an interview or questioning, after previously invoking his right to counsel, then the military interrogator is required, at a minimum, to make "reasonable efforts to notify the [suspect's] counsel." Otherwise, the "waiver of the right to counsel is not effective[.]" Mil.R.Evid. 305(g)(2). I would hold that all four statements were inadmissible due to lack of notification to counsel; set aside the Additional Charge (wrongful use marijuana); and authorize a rehearing or remand for sentence reassessment.